Judge Tucker.
This was a supersedeas to a judgmeiit of the General Court, on a scire facias issued on behalf of the Commonwealth, fitly, 1799, against the executor of Nhnmo, formerly Sheriff oí Princess Anne County, to revive a judgment against his testator in April, Í78C. It appears from an exhibit, made part of the bill oí exceptions, that the personal estate of die testator, (except a very few articles of household furniture, and one slave who had run away with the British army during the revolutionary war.) including his slaves, was sold in the testator’s life-time, under a venditioni exponas, issued from die General Court, at the instance of the Commonwealth, and a return thereof made. 1
The first error, suggested in the petition for a supersedeas to this judgment, is, that the Commonwealth is bound by the statute of limitations ; and thaiefere the sdre facias was for ever barred, after ten years.
Whether the acts of limitations extend to the Commonwealth, or not, was fully argued and considered in the case of Kemp v. The Commonwealth(a) in which the plea of the act of limitations was the sole defence relied on. And this Court, consisting at that time of three Judges, judge Lyons, Judge Carrington and myself, two of whom are not present, unanimously agreed that they did not. in civil suits, not founded upon any penal act.
But a collateral question growing out of these circumstances has arisen, and been discussed at the bar, namely, whether an executor is bound at his peril to take notice of all judgments obtained against his testator in his life-time, or not ? That such is the law of England cannot be doubted, provided the judgment be docketed according to the statute of 4 and 5 W. and M. c. 20. as we are told by *66 Judge Blackstone. (2 Comm. 511.) It would seem from this, that the rule is in some respects a statutory one ; it must .however be acknowledged that it was also a rule of the common-law; to that effect is Cro. Eliz. 793. and Godolphin., in his Orphan's Legacy, 170. is so likewise; though in 2 And. 159. the Court thought that an executor ought not to be charged with a judgment of which he had no notice.(a) But it is not every common law rule, founded upon the judicial system of that country, that can be deem-e(]^jn strictness, applicable to the circumstances and situation of this. In England there are only four Superior Courts of Record, all held at the same place, and their records accessible to every one who chooses to consult them.
A regular train of attorneys, and officers belonging to these courts, and well versed in every thing that relates to them, are capable in a few hours of furnishing that information respecting matters of record, which might defy a life of research in this. In this country we have now two hundred Courts of Record ; the records transferred from one place to another in various instances; and the very names of some Counties in which Courts have formerly been held sunk in oblivion. There was once a County in Virginia called Rappahannock County, and another called Tohoganta: there areno such Counties at this day. (b) Can it be supposed, that under such circumstances, (even if the rule of the common law in England be such as above suppos-. d,) an executor must at his peril take notice of all judgments against his testator in his life-time, in what Court, or part of the state soever, the same may have been entered ? I conceive not; for, if such a principle be established as law, no man will ever be an executor.
But, while I reject the application of the rule to all judgments, I think it reasonably and justly applies to some. An executor may well be presumed capable of informing himself of judgments obtained against his testator in the County or District Court within whose jurisdiction he resided, and to whose process he was daily amenable. So, as to judgments in the General Court, which has ju *67 risdiction over the whole Common wealth in respect to public agents and defaulters. If a testator has been a public collector of taxes, this, of itself, is a sufficient warning to an executor, to inquire whether any judgment hath been obtained against him as a delinquent. And, if there be, it will be difficult to excuse his neglect in making the inquiry. But, in the present case, the judgment was nearly of five years standing before the testator’s death. His whole visible personal property, except a few trifling articles of household furniture, valued at 26/. only, had been taken and sold upon an execution, issued in behalf of the Commonwealth. The executor might have concluded the debt satisfied, under such circumstances ; especially if the agents of the Commonwealth had taken no steps to recover the balance, by an execution against the body of the testator, or had not given the executor actual notice that a balance still remained due. The great lapse of time (on which I lay great stress) between the judgment in April, 1786, and the testator’s death, in January, 1791, united with the circumstances just noticed, and the liability of a Sheriff’s securities to make good any deficiency, prompt me to say, that unless notice of that judgment were proved to have been given to the executor, he ought not to be charged as for a devastavit in paying other just debts of his testator, merely on account of the notice which the law implies in such cases. For the reason of the law seems to be this : “ that the judgments of all courts, upon matters “ or persons within their jurisdiction, are conclusive, so “ long as they are in force ; and the parties are bound to “ yield obedience to them; and that obligation to perform “ follows the assets in the hands of the executor or adminis“trator.”(a) Now, although a judgment may be enforced, either by a capias ad satisfaciendum, fieri facias, or eiegit, within the year, yet after that period the judgment creditor cannot enforce his judgment, even against the testator himself, if living, without notice by scire facias. And it seems strange that an executor should thereafter be hound at his peril, to, take notice of that of which bin *68 testator must receive notice, before he could be charged upon the judgment formerly obtained against him. If dormant judgments will not bind a purchaser without noticed(a) wherefore should they bind an executor without notice ?
Another error suggested is, that the sum of 189/. arising from the sale of the land directed by the testator’s will to be sold, was only equitable assets; and as such, distributable pari passu among all the creditors. The rule certainly is, that in administering legal assets the Court follows the law; but as to equitable assets it proceeds by the rule of equality, 4 Bro. Ch. 171. Lowthian v. Hassel. And in that case the, Court refused to compel a creditor, who had by diligence obtained payment of one bond out of five, to bring the. money received for that bond, into contribution. I am also of opinion, that the judgment having run out of date, ceased to be a lien upon the lands, until revived by scire facias, according to the decision of Eppes v. Randolph.(b) The act making Sheriff’s lands liable to the Commonwealth’s judgments, did not pass until eighteen months after the judgment in this case.(c) With respect to this 189/. I conceive the General Court' ought totally to disregard it, as not being legal assets ; leaving it to the Commonwealth to pursue its remedy for a due proportion thereof, as the Attorney-General may be •advised.
We come now to that instruction of the Court to the Jury, directing that no discount, or credit, ought to be allowed the defendant for any item in his administration account, except for the funeral expenses. Such certainly is the rule laid down by Lord Ch. J. Holt, 1 Salk. 296. Our law is however more liberal ; executors are to be allowed “ all reasonable charges and disbursements, which they shall “ lay out and expend in the funeral of the deceased, and other “ their administration ;n such, for example, as m ay be incurred in consequence of the provisions contained in the 46th section of the act'concerning wills, which in certain cases give him the charge and care of the whole estate, real and *69 personal, for a certain period ; and the same rule will hold, think die practice in England does not. On this point, therefore, I have no doubt that the instruction obtlie Court was not altogether correct. I am therefore of opinion, that th.- judgment be reversed, and the cause sent back, with directious pursuant to the preceding opinion.
Judge Eo anü.
This was a scire facias issued on behalf of the Commonwealth, from the office of the General Court, on the l?,lh of July, 1799, against fames Nimmo, surviving executor of William Nimmo, deceased. Its obj cc.t was to enable the Commonwealth to have the effect of a judgment obtained against William Nimmo, the testator, in the General Court, on the S6th of April, 1785, for 208/. 10s. Aid. the balance of the one per cení, tax, collected by the defendant in the County of Princess Anne, for the year 1784, and 31/. 5s. 6 \-%d. damages ; amounting in the whole to 239/. ld.v. 10 Í-2u. with interest and costs, as in the said writ of scire facias is more particularly mentioned.
The appellant, (the executor,) having appeared, pleaded, 1st. Payment by the testator; and, 2d. Fully administered ; on both which pleas issue was joined. The Jury' -on the trial found against the defendant on the first plea j and, on the second, found that the defendant, at the time of issuing the scire facias, had divers goods and chattels, which were of the testator at the time of his death, in hit. hands to be administered, to the value of 253-7. Is. 8d. parcel of the debt, damages and interest aforesaid wherewith ho might have satisfied the same pro tanto ; and judgment «as given against him for the same, in the form usual in such cases. This finding of the Jury was under the influence of an opinion of the Court, stated in the bill oí exceptions, and to be presently more particularly noticed.
The first inquiry which presents itself, is respecting the nature and character of this writ of scire facias ; whether *70 it is a scire facias to revive the judgment because of the lapse of ten years, or even of a year and a day since its rendition ; or because of the death of the defendant, and the devolution of his interests upon his executor, who was no party to the original judgment. I rather think it is in this last view only that this scire facias is to be considered.
I will assign my reasons for this opinion. It is laid down in 6 Bac. Abr. 112. that one who is no party to the record or judgment, as heir, or executor, &c. though it be 'within the year, shall have no writ of execution to enable himself to the suit, and so of the tenant or deíendant ; for the alteration of the person altereth the process. On this ground, then, of the death of the defendant, this writ of scire facias shall be taken to have issued, especially if, in truth, one was not necessary on any other ground. This brings us to that inquiry, and more particularly to the question whether the Commonwealth was barred of her execution by the lapse of time in the case before us. That inquiry again presents itself in a twofold point of view; 1st. Whether a scire facias be necessary, after the lapse of a year and a day, in the case of a judgment of the Commonwealth ; and, 2d. If so, whether the right to sue out a scire facias is barred by the lapse of ten years under the act of 1792.
As to the first branch' of this inquiry, it is held in 1 Salk. 603. that, in case of the King, there need not be any scire facias after the year and day : and it would seem that the declaration in the act of October, 1778, c. 2. “ that no time “ shall bar the Commonwealth of execution,” has adopted this principle in relation to judgments of the Commonwealth. That act speaking of judgments in favour of the King, which did not require a scire facias after the year as aforesaid, it is reasonable to consider it as placing the Commonwealth in the same situation ; as exempting the Commonwealth as well as the King from the necessity of suing out a scire facias. In opposition to this principle it is said, that the maxim “ nullum tempus occurrit regif which gives this rule in England, arises front the roya *71 prerogative, and is odious and inapplicable to the nature of our government. In answer to this objection it would §eem that, while our Constitution inhibits to the “ Governor the exercise of any power or prerogative, by c‘ virtue of any law, statute, or custom of England,”(a) it does not interdict such preferences and pre-eminences as may be given to the Commonwealth by the acts of our own Legislature. In this latter class, the aforesaid act of 1778 causes the present case to fall; and that circumstance supersedes the necessity of considering how far, on general principles, the maxim “ nullum tempus occurrit regí” applies to this country. Whenever that point must, of necessity, be decided, it will be important to consider how far the decision in Kemp v. The Commonwealth(b) and, also, what is said by the Court in the case of Birch v. Alexander (c) have seemed to give a countenance to its application. I will merely say, at present, that within my observation, the Commonwealth is not in general, and from the nature of the case cannot be, on an equal footing with private suitors, in respect of diligence^ attention, &c. (however vigilant and faithful its officers may be,) and that, therefore, the reason of this pre-eminence may be in some measure as applicable to the present government as to the former.
I leave that general question, however, for future decision. It is not necessary to be decided in this case ; for here the Legislature has spoken explicitly on the subject i» the aforesaid act of 1778. That act has never been repealed ; it is founded, perhaps on good reason; is supported by the analogy, as to this point, of the doctrine in England as aforesaid ; and therefore, neither the general limitation as to writs of scire facias provided by the act of 1792,(d) nor the common law limitation of a year and a day, does, I think, embrace the judgment in question.(1) The Com *72 mcnweallh, therefore, hada right to sue out the scire facias' in this case, the lapse of time notwithstanding; a .d M'as entitled to recover, in satisfaction of its judgment, all such of the testator’s assets as were not otherwise legally administered in favour of other creditors.
Having thus cleared the way for the consideration of the particular instruction of the Court, under which the verdict of the Jury was found, and which verdict can only stand in the event of that instruction being correct, let us examine the rectitude thereof.
The defendant, at the trial, having given in evidence, in support of his second plea, an account of his administration which had passed the Auditors of Princess Anne Court,, on the 5th of May, 1800, who reported that vouchers were produced to them to sustain the charges in the account, leaving a balance of 27/. Is. 1 l-4d. in the hands of the executor; the Attorney-General, on the part of the Commonwealth, gave in evidence to the Jury an inventory signed by the executor, (the items of which exactly correspond with those of the credit side of the account exhibited by the defendant,) with a memorandum thereon that “ the “ other personal estate of William Nimmo, including his “ slaves, was sold in his life-time under a vendifioni expo- “ nas, issued from the office of the General Court, at the “ instance of the Commonwealth, and a return thereof “ made by the Sheriff of Princess Anne and moved the Court to instruct the Jury that no credit should be allowed the defendant for any item in his aforesaid account, except forfuneral expenses; alleging that it appeared, from the memorandum aforesaid, that he had notice of the judgment aforesaid, before making the disbursements in the ' said account mentioned. The Court did accordingly in *73 siruct the Jury to the effect desired by the Atttorney-Gcneral; to which instruction the defendant excepted.
I am of opinion that this instruction was eminently erroneous in ail those particulars (and for the reasons so luminously) stated in the seven last errors assigned in the petition for the supersedeas. I beg leave to refer to thosé reasons particularly ; and to adopt them as the ground of my opinion on this part of the case. They had great weight with me at the time of awarding the supersedeas, and 1 understand are now all assented to by the unanimous opinion of the Court. Still, as those exceptions do not go to the zvhole of the items contained in the account; and, as the Commonwealth is not barred from recovering in this case on the merits, she is entitled to a judgment for the residue of tiic account; unless she be precluded on the ground stated by the Judge who has preceded me ; that is, on the ground that the executor was not bound to take notice of the judgment on which the scire facias is founded. Between the rendition of the judgment against the testator and his death, less than ttive years had elapsed, and that Judge seems to suppose that the executor had a right to presume, from such lapse of time, and because no express notice is shewn to have been given him of the existence of the judgment, that it was paid, and that consequently he was authorised to apply the assets to the payment of debts of inferior dignity.
I am not prepared to say that the memorandum before mentioned amounts, on account of its iudefinitencss, to proof of express notice of this particular judgment; but this I am prepared to say, that this judgment, being rendered in the General Court, having at the time general jurisdiction throughout the Commonwealth, against a public collector ; a Court having the peculiar jurisdiction in the fiscal concerns of the Commonwealth, and five years not having elapsed since its rendition j ought to have beer», taken notice of by the executor, at his peril, in the administration of the assets of the testator. X should suppose *74 it would be readily admitted on all hands, that, within the year and day, the executor must have taken notice of it: but if, in respect of de!<ts due to the Commonwealth, this limitation does not exist to bar the execution as aforesaid, this case cannot be differed from one in which that lapse of time had not occurred.
It is a universal rule that judgments and debts of record are to be preferred, in the administration, to simple contract debts, and that executors ought, at their peril, to take notice of them. In Littleton v. Hibbins(a) which was scire facias v. executors, upon a judgment against the testator in debet; “ they pleaded that, before “ they had any conusance of this judgment, dn-v had fully “ administered all the assets in paying .debts upon obliga- “ Lions ; and thereupon it was demurred, and on argument “ adjudged that it was not any plea: for that they at their “perilought to take conusance of debts upon record, and “ ought first of all (unless for debts due to the Queen “ wherein she hath a prerogative) to satisfy them, and al- “ though the recovery was-in another County than where “ the testator and executors inhabited, it is not material.” In Ordway v. Godfrey; (b) to a scire facias v. an administratrix to have execution of a judgment against her intestate, the plea was (in general) that she had no goods to be administered at the time of suing the writ, or afterwards ; on demurrer, this was held to be no plea; for that “ a “ judgment cannot be answered without another judgment, “ and it may be she had administered all the goods in pay- “ ing debts upon specialties, which is not any administra- “ tion to bar the plaintiff;” and “ that she should have “ pleaded specially how she had administered.” This decision seems full up to our case ; not only as to the point of the bar, but also as to the generality of the plea, which in that case was held to be insufficient. It is true that, in a note in 3 Bac. Abr. 80. referring to this case, (which has now perhaps become the general doctrine,) it is said, that the executor may, to the scire jcicias, plead generally that *75 lie hath fully administered, without shewing that he did so in paving debts of as high a nature ; but yet that that must be “ proved upon the evidence, else the Inal will fail out “ against the executor
In Herberts case,(a) it is said by > the Master ot the Roils, inter alia, “ that executors shall be presumed to take “ notice of all judgments, even in the inferior Courts of “ Raw, and therefore are not to pay bonds before such " judg'ui-nls, at their peril.”
And, in a very late case, this doctrine is fully admitted ; with this exception, indeed, that die judgment, in order to have the preference, mast he dodeted according to the English statute of 4 and 5 Wm. & Mary, c. 20.(b) That decision, which was in favour of the adreiuisí raírix, turned solely on the necessity of complying with the requisites of the statute in relation to docketing the judgments, which, otherwise, were thereby deprived of their preference : in other respects it entirely affirmed and admitted the doctrines I have been stating ; and, therefore, (as we have no such statute in this country,) the decision is lull up to the point before us. The superadding the requisite of docketing judgments in England., by the Legislature, in order to enable executors the more easily to find them out and know of their existence, shews that the hardship of the case, in relation to the judgments of die com iy Courts, (to be presently more particularly noticed,) is improperly addressed, to this tribunal.
Testing our case by these decisions, it is ineontesh: le, that the executor should have taken notice of the judgment mentioned in the scire facias, át his peril ; ana that he should have shewn in his glen, or at least, proved on the trial, that he had applied the assets to the payment of debts of as high a dignity, or else there would be no bar; neither of which has he done.
Thus stands the case as upon the Englidi authorities. I will now refer to an opinion delivered in this Court, laying down the law on this subject with great precision and *76 propriety. It is that of Judge Fleming in the case of Mayo v. Bentley.(a) It applies exactly to the question now before us in all its parts, and overrules all the objections which have been taken on the ground of notice. This Court was divided on the main point in that case of Mayo v. Bentley; but there was no division whatever upon any principle or topic embraced by so much of that opinion as I shall now quote. I yield to the doctrine it contains my most decisive approbation.
In that case judge Fleming said, “ In the general division of debts (after funeral and testamentary charges “ are paid) there are three sorts ; 1st. Debts by record; (i 2d. Debts by specialty; and, 3d. Debts by simple contract. u Passing by the cases in the E tig lis h books respecting u debts due to the Crown, and those by recognisance and “ statutes, let us consider such debts only, as are due from “ citizen to citizen, and apply to the case now under con» “ sideration. Debts by judgment, then, being/zrsf in order, are to be first paid; and being debts of record, an exeu cutor or administrator is bound to take notice of them ^ at his peril, however distant the record may be from^his <£ residence : and in the present case there was a judgment “ for 370/. against Wm. Ronald in the County Court of Ac- “ com Ac ; and, had the administrator exhausted the assets in paying debts of inferior dignity, he must have answer-41 ed it (that judgment) out of his own estate.” I shall leave this opinion to speak for itself : it is so apposite and emphatical that I can add nothing to it.
In the case of Hopkirk v. Pendleton, decided in the Federal Circuit Court of this State ai the last term, and of which a gentleman of the bar' has obligingly favoured me with a note, the facts were these : In the year 1772, Spears, Bowman & Co. (of whom Hopkirk is surviving partner) recovered a judgment against Gunn, in the County Court of Henrico; soon after which Gunn died, leaving Pendleton and others his executors, of whom Pendleton qualified and proceeded to administer the assets. In 1803, *77 Mopltirk brought debt on the said judgment; Pendleton pleaded fully administered, on which there was an issue. The Jury found a special verdict, in which they state the judgment of 1772 ; that the same had not been paid ; and that Pendleton had fully administered the assets by paying debts due by specialties and simple contracts, and referred the law to the Court, as to the right of the plaintiffs to priority. Chief justice Marshall decided that the deft ndant was bound at his peril to take notice of the judgment, and having paid debts of inferior dignity, they were no bar to the plaintiff’s recovery. I shall make no comment on the application and appositeness of this decision to the ease before us.
I have already remarked that the judgment in question was one of the General Court; a Court having at the time a jurisdiction (and especially in relation to fiscal concerns) coextensive with the limits of the Commonwealth. This pase then steers clear of objections, as to this point of notice, in relation to judgments of merely local Courts. I am sensible that great hardships may exist in obliging an executor to notice the judgments of the numerous and heal Courts of our country: but these hardships did not prevail with respect to the lien upon lands created by a judgment, although the objection was taken with great ability in the case of Eppes v. Randolph.(a) In that case a lien was supposed, though not decided, to be created by the judgment oí any County Court in the Commonwealth; (due requisites in other respects being observed ;) and that in relation to land, which is not the proper and natural fund for the payment of debts. It therefore goes beyond the case at bar, which only relates to personal property, the natural subject of administration. Neither did that argument of hardship prevail in either of the cases of Mayo v. Bentley, or Hopkirk v. Pendleton, in both of which it equally existed ; and yet the general doctrine was adhered to. It is certainly not very necessary (as the judgment before us is a judgment of the Gf.mkral Court, and there *78 fore not different, as to the point of notice, from the. judgments of the Courts of Westminster Hull in England,) to consider the question in relation to the judgments of the County or other local Courts. But, I may be permitted to ask) (inasmuch as almost all our Courts have now become local in their jurisdiction,) if the objection now taken were to prevail, what would become of the rule of law, established time immemorial, giving judgment debts a preference ? Would not such a construction repeal that rule ? and is this a power proper for the Courts oj' Justice to exercise ? It is true that a new tier of Courts has been lately created by the Legislature, making the number of these local tribunals perhaps amount to 200 ; but the principle is not charged thereby, but merely the degree of the hardship. I shall therefore adhere to the doctrine existing, time out of mind, in this country, giving to the judgments of the County Courts the same effect, in relation to the rights of creditors, as to those of the General Court: I should therefore have no hesitation to give to the judgments of all ihe Courts of Record in the Commonwealth, the same effect as was ascribed by Judge Fleming to the judgment of the County Court of Accomac, and by Chief Justice Marshall to that of the County Court of Henrico, in the opinions and judgments I have mentioned.
The result of my opinion is, that the judgment before us ought to be reversed; the instruction of the Court being erroneous ; that, in directing the instruction proper to be given on the future trial, we should affirm the right of the executor to a credit for all the items comprehended in the seven last errors assigned for the supersedeas; that, with respect to the 187/. for the land sold, stated in the account, the-Commonwealth is entitled tono part thereof, except by application to a Court of Equity, and then only, (as it now appears to us,)pari passu with other creditors ; and that, as to all the moneys paid by the executor, as stated in his account, to satisfy debts of dignity inferior to the judgment in question, he paid them in his own wrong ; and *79 that pro tanto the Conuncnwealih ought to be permitted to talce out its execution.
Judge Fleming.
The three principal.points in this ease are, 1st. Whether the Commonwealth was barred from issuing a noire facias to renew the judgment in question, a ter a lapse of ten years? and if not, 2d. Whether actual notice of the judgment, to the executor, was necessary, or in other words, whether he was not, at his peril, bound to take notice of it, and to govern himself accordingly ? And a third question is, whether the Generad Court erred in instructing the Jury, “ that the defendant was not “ by law entitled to any credit or discount, for any item in “ his administration account, except for the funeral ex* “ penses.”
On the first point, little need be said. The English maxim of nullum tempus occur rit rcg:, seems to have been, recognised and enforced by our legislature, soon after the revolution ; as by the act of October, 1778. c. 2. s. 4. it is declared, that “- no time shall bar the Commonwealth of “ execution.” And the rule seems to have been well settled in the case of Kemp v. The Commonwealth, in October, 1806. (a)
With respect to the second point, it seems to be settled that executors ought at their peril to take conusance of debts upon record; and first of all to satisfy them ; and although the recovery be in another County than where the testators and executors inhabit, it is not materiaL(b) And on this point, the opinion of this Court was unanimous (as well as my memory serves me) in the case of Mayo v. Bentley, administrator of Wm. Ronald. And if an executor or administrator is hound to take notice of a judgment on record, though in a distant country, a fortiori is he bound to notice a judgment of the General Court, having jurisdiction over the vvhole State, and where judgments against public debtors are most commonly rendered. ’
As to the third point, I have no doubt but the General Court erred in the instruction given to the Jurv, at the- *80 trial: for in the act concerning wills, the distribution of in-testates’ estates, &c. section 52. it is enacted, that executors and administrators shall be allowed in their accounts, all reasonable charges and disbursements, which they shall lay out and expend in the funeral of the deceased, and other their administration, and may be allowed such recompense for their personal trouble, as the Court, in passing their account, shall judge reasonable.
There are several articles of this description, in the executor’s account passed by the County Court of Princess Anne, and particularly stated in the petition for a supersedeas, for which the appellant ought to have had credit, but were rejected by the Jury, in consequence of the erroneous instruction of the Court.
I am also of opinion that the sum of 189/. stated in the executor’s account to have arisen from the sale of 126 acres of land, left by the will of the testator to be sold for the payment of his debts, was not legal, but equitable assets only, and as such distributable pari passu among all the creditors ; and therefore ought not to be appropriated tet the Commonwealth alone.
I am of opinion, upon the whole, that the judgment ought to be reversed.
By the whole Court, (absent Judge Lyons,) the judgment of the General Court reversed.
The judgment of this Court was, that the judgment of* the General Court “ is erroneous in this, that the said “ Court instructed the Jury that the defendant, now plain- “ tiff, was not entitled to any credit or discount for any of “ the items in his account of administration, stated in the “ bill of exceptions, except for the funeral expenses 3 “ therefore it is considered, that the said judgment be re- “ versed and annulled. And this Court is further of “ opinion, that the plaintiff ought to have been allowed all « reasonable charges and disbursements laid out and expended by him in the administration of the estate of his *81 ** testator, as stated in his account audited and passed hj “ the County Court of Princess Anne, and set out at large “ in the bill of exceptions ; but that the several sums paid “ to Haynes Brent, Prudence Thetaball, James Simpson, “ Mary Selden, hatima Halstead, Gresham Nimmo, and “ Elizabeth Hunter, being paid in discharge of debts of dignity inferior to that of the judgment mentioned in the “ said writ of scire facias, were paid by the said executor, “ so far as the same were paid out of the legal assets of “ the testator, in his own wrong, and therefore that he “ ought not to have any credit therefor. This court is “ also of opinion, that the sum of one hundred and eighty* “ nine pounds, the amount of the sales of one hundred “ and twenty-six acres ofland, stated in the account aforeu said, as left by the will to be sold, not being legal, but “ mere equitable assets, and as such distributable pari passu “ among all the creditors of the testator, ought not wholly <s to enure to the benefit of the Commonwealth, by virtue “ of the judgment in question, and, being equitable assets “ only, as appears to this Court, is not a proper subject <c for the cognisance of a Court of Law ; whereupon, It is “ ordered, that the Jury’s verdict be set aside, and that a “ new trial be had in the cause ; upon which an instruction “ is to be given to the Jury in conformity to the princi, les “ declared by this opinion of the Court, which is ordered “ to be certified to the said General Court.”

 1 Hen. & Munf. 85.

 Per Lawrence, J. 6 T. R. 388. Hickey v. Hayfer.

 Vide Acts of 1785, c. 69.

 See Ld. Ch. Talbot, Forest. 222.

 2 Call, 187. Eppes, &c. v. Randolph.

 2 Call, 186.

 1787, c. 40.

 Constitution of Virginia, art. 9.

 1 Hen. & Munf. 85.

 1 Wash, 34.

 Rev. Code, vol. 1. p. 108.

 Note by Judge Roane.
Since this opinion was delivered* llufve been informed by Mr John Brown, Clerk of this Court, that he has never known a scire facias to issue» on the *72 mere ground of the lapse of time, cither under the royal or present government, in the case of executions in favour of the King or Commonwealth ; hut that the practice was to issue executions .without such process, unless it was rendered necessary hy the change of parties.

 Cro. Eliz. 793.

 Ibid. 575.

 3 P. Wms. 117

 Hickey v. Hayter, 6 T. R. 384. anno 1795.

 Call’s MS.

2 Call. 125.

 1 Hun. &c. Munf. 85.

 Cro. Eliz. 793. Littleton v. Hibbins.